# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs  January 7, 2016

## IN RE:  LILLY C., ET AL.


### Appeal from the Juvenile Court for Cumberland County
#### No. 2015JV4757          Larry M. Warner, Judge

---

### No. E2015-01185-COA-R3-PT-FILED-FEBRUARY 25, 2016

---


This appeal involves termination of a father's rights to three children.  The trial court found the father, who was incarcerated at the time of the final hearing, had abandoned the children by engaging in such conduct prior to incarceration as to exhibit a wanton disregard for their welfare, in that there was a history of domestic violence between the father and the children's mother.  Further, the father had violated his probation by failing a drug screen.  The court also found clear and convincing evidence revealed the father had not substantially complied with the provisions of the permanency plans.  As a result, the court found termination was in the best interest of the children.  The father appeals. We affirm.


### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded


JOHN W. MCCLARTY, J., delivered the opinion of the court, in which, CHARLES D. SUSANO, JR., and THOMAS R. FRIERSON, II, JJ., joined.

Jonathan Roy Hamby, Crossville, Tennessee, for the appellant, James L. C., Jr.

Herbert H. Slatery, III, Attorney General and Reporter, and Paul Jordan Scott, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee, Department of Children's Services.

## OPINION

## I. BACKGROUND

Three sisters - Lilly C. (born 7/2007), Lexis C. (born 6/2010), and Cameron C. (born 4/2013) - entered state custody on May 23, 2014, after being found in a motel room with syringes and glass pipes on a table and a marijuana roach on the headboard. They were in the custody of Starla M. C. ("Mother"), who is not a party to this appeal.[1] According to the Department of Children's Services ("DCS"), the children had been living in a camper without running water or electricity. They were adjudicated dependent and neglected.

On June 19, 2014, DCS developed an initial permanency plan. James L. C., Jr. ("Father") was in jail on felony charges of selling over .5 grams of cocaine. His plan required him to resolve pending criminal charges, comply with the rules of probation, refrain from further criminal activity, submit to a drug and alcohol assessment and follow all recommendations, attend AA/NA meetings, submit a list of all prescribed medications to DCS, submit to random drug screens, provide proof of appropriate housing, demonstrate the ability to maintain a clean and safe home, maintain sufficient food in the home on a daily basis, develop a budget, obtain and maintain a legal means of support, complete parenting classes, obtain a psychological evaluation and follow all recommendations, sign releases allowing DCS to communicate with his probation officer and mental health providers, actively participate in programs while in jail, send letters to his daughters, and attend visitation with them. On July 10, 2014, the Family Services Worker ("FSW") for DCS visited Father in jail and explained the permanency plan to him. Shortly thereafter, upon entering a guilty plea to facilitating the sale of over .5 grams of cocaine he received a four-year suspended sentence and was released on probation. At that time, FSW explained the plan to him again, scheduled a visit with the children, offered assistance in obtaining employment, and provided her contact information. On August 1, 2014, after the court ratified the plan, FSW mailed a copy of the ratified plan to Father. A second permanency plan, containing the same action steps as the initial plan, later added the goal of adoption for the children.

Father made efforts to address a few action steps. He attended "Celebrate Recovery," the equivalent of AA meetings for those incarcerated.[2] He sent letters to the children and attempted to get into parenting classes while in jail. Because of a court order, he also signed releases to allow DCS to communicate with his probation officer and view his medical records. However, he did not complete the remaining action steps.

---

[1] Mother surrendered all parental rights to the children on January 30, 2015.
[2] FSW testified Celebrate Recovery is not what DCS considers to be an alcohol and drug treatment.

During Father's probation, FSW scheduled and provided notice of another parent-child visit, made multiple attempts at contacting Father and his family who may have known his whereabouts, and mailed additional copies of the permanency plan and criteria for termination of parental rights. About a month later, Father violated his probation by testing positive for methamphetamine and Percocet without a prescription. He was ordered to serve the remainder of his four-year sentence in prison. After the probation revocation, FSW provided stamped and addressed envelopes so Father could send letters to the children, gave him updates on the children, and held a child-and-family team meeting. Father was still incarcerated at the time of trial. He hoped for early release, but his sentence would not fully expire until 2018.

Before Father violated his probation, he had 33 days to attempt completion of the permanency plan requirements. He failed to do the following: did not provide proof of housing or a legal means of income; did not maintain contact with DCS; did not arrange a psychological evaluation or an alcohol-and-drug assessment (more individualized drug-treatment plan than Celebrate Recovery); did not visit his children despite having notice of two opportunities for doing so; and did not pay child support.

On February 20, 2015, DCS petitioned to terminate Father's parental rights. After a hearing, Father's parental rights were terminated on the grounds of abandonment by wanton disregard and substantial noncompliance with his permanency plan. The court also found termination was in the best interest of the children. Father appeals the termination of his parental rights to this Court.

## II. ISSUES

The issues raised in this appeal are restated as follows:

> A.     Whether clear and convincing evidence supports the court's termination of Father's parental rights pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(iv).

> B.     Whether clear and convincing evidence supports the court's termination of Father's parental rights pursuant to Tennessee Code Annotated section 36-l-113(g)(2).

> C.     Whether clear and convincing evidence supports the court's finding that termination of Father's parental rights was in the best interest of the children pursuant to Tennessee Code Annotated section 36-1-113(i).

# III. STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.,* 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(l)(1)). "[F]ew consequences of judicial action are so grave as the severance of natural family ties." *M.L.B. v. S.L.J.,* 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination of the parent-child relationship. *In re Drinnon*, 776 S.W.2d at 97; *In re Adoption of Angela E.*, 303 S.W.3d 240, 251 (Tenn. 2010). A parent's rights may be terminated only upon

> (1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
>
> (2) [t]hat termination of the parent's or guardian's rights is in the best interest[] of the child.

Tenn. Code Ann. § 36-1-113(c). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.,* 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), abrogated on other grounds by *In re Audrey S.,* 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.,* 37 S.W.3d at 474; *In re M.W.A., Jr.,* 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002); *In re S.M.,* 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.,* 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*,

84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.,* 37 S.W.3d at 474.

In 2010, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> A reviewing court must review the trial court's findings of fact de novo with a presumption of correctness under [Rule 13(d) of the Tennessee Rules of Appellate Procedure]. *See In re Adoption of A.M.H.,* 215 S.W.3d [793,] 809 [(Tenn. 2007)]. In light of the heightened burden of proof in proceedings under [Tennessee Code Annotated section] 36-1-113, the reviewing court must then make its own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim. *State Dep't of Children's Servs. v. Mims*, 285 S.W.3d [435,] 447-48 [(Tenn. Ct. App. 2008)]; *In re Giorgianna H.,* 205 S.W.3d 508, 516 (Tenn. Ct. App. 2006); *In re S.M.,* 149 S.W.3d 632, 640 n. 13 (Tenn. Ct. App. 2004). Appellate courts conduct a de novo review of the trial court's decisions regarding questions of law in termination proceedings. However, these decisions, unlike the trial court's findings of fact, are not presumed to be correct. *In re Angela E.,* 303 S.W.3d [240,] 246 [(Tenn. 2010)]; *In re Adoption of A.M.H.,* 215 S.W.3d at 809.

*In re Bernard T.*, 319 S.W.3d 586, 596-97 (Tenn. 2010).

## IV. DISCUSSION

### A.

Abandonment by "conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child" can result in termination of a parent's rights. Tenn. Code Ann. § 36-1-102(1)(A)(iv); Tenn. Code Ann. § 36-1-113(g)(1). This ground applies when, as here, the parent was incarcerated at the time of the termination petition or during all or part of the four months preceding the petition. Tenn. Code Ann. § 36-1-102(1)(A)(iv). This court has held "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *In re Audrey S.*, 182 S.W.3d 838, 867-68 (Tenn. Ct. App. 2005). Exposing a child to domestic violence is conduct exhibiting wanton disregard. *In*

*re Robert D.*, No. E2013-00740-COA-R3-PT, 2014 WL 201621, at *8 (Tenn. Ct. App. Jan. 17, 2014).

Father was incarcerated at the time of the termination petition and for almost the entirety of DCS's involvement in this case. In addition to Father's drug use and criminal behavior, he admitted to domestic violence in the home. Father told FSW he hit Mother when he was "young and dumb." Lilly, who described Father as "scary," observed him hit Mother while she was pregnant.

Despite Father contending there was no clear and convincing evidence that his pre-incarceration conduct displayed a wanton disregard for the welfare of his children, we hold that his involvement in criminal behavior, almost immediate probation violation, and domestic violence against a pregnant wife, provided evidence of a wanton disregard for the welfare of his children. He claimed to be unaware of the inadequate living situation of his children and his wife's substance abuse. In our view, the evidence supports the determination of the court to terminate Father's parental rights on this ground.

B.

A court may terminate parental rights when a parent is in "substantial noncompliance . . . with the statement of responsibilities in a permanency plan or a plan of care." Tenn. Code Ann. § 36-l-l13(g)(2). Under this ground, the court must first find the plan requirements are reasonable and related to conditions that necessitate foster-care placement. Tenn. Code Ann. § 37-2-403; *see In re Valentine*, 79 S.W.3d 539, 547 (Tenn. 2002). Conditions that necessitate foster-care placement "include conditions related both to the child's removal and to family reunification." *In re Valentine*, 79 S.W.3d at 547. The court must then find the noncompliance is substantial. *In re M.J.B.,* 140 S. W.3d at 656. To assess a parent's substantial noncompliance with a permanency plan, the court must weigh "both the degree of noncompliance and the weight assigned to that particular requirement." *In re Valentine*, 79 S.W.3d at 548.

Father did not work toward any plan requirements during the time he was out of jail from mid-July to mid-August 2014. He did not provide proof of housing or a legal means of income. He did not arrange a psychological evaluation or set up an alcohol-and-drug assessment. Most significant, Father did not visit his children despite having notice of two opportunities for doing so. Instead of working on the plan, Father avoided contact with DCS, missed visitation with his children, began using methamphetamine, and violated his probation. Clear and convincing evidence supports the court's termination under this ground.

**C**.

In order to terminate parental rights, a court must determine clear and convincing evidence proves not only that grounds for termination exist, but also that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113 (c)(i) and (ii). In a best interest analysis, Tennessee Code Annotated section 36-1-113(i), provides:

> (i)  In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the Court shall consider, but is not limited to, the following:
>
> 1)  Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> 2)  Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> 3)  Whether the parent or guardian has maintained regular visitation or other  contact with the child;
>
> 4)  Whether meaningful relationship has otherwise been established between the parent or guardian and the child;
>
> 5)  The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
>
> 6)  Whether the parent or guardian, or other person residing with the parent or guardian. has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household.
>
> 7)  Whether the physical environment of the parents or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol controlled substances or controlled substances analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
>
> 8)  Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent

the parent or guardian from effectively providing safe and stable care and supervision for the child; or

> 9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to T.C.A. § 36-5-101.

Tenn. Code Ann. § 36-1-113 (i). This list of factors is not exhaustive, and the court need not find the existence of every factor for termination. *In re MA.R.,* 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Any conflict between the interests of the parent and the child must be resolved in favor of the child's best interest. Tenn. Code Ann. § 36-1-101(d).

Instead of making an adjustment of circumstances, when Father was released on probation, he began using methamphetamine and failed a drug screen. He did not provide proof of housing or employment. Revealing no interest in his children, Father missed both scheduled visitations during the time he was out of jail. Even before the children entered state custody, Father's visitation was sporadic. His last in-person contact with the children occurred months prior to their arrival in state custody.

While Father was in the home, he demonstrated physical abuse. He admitted to engaging in domestic violence, and Lilly disclosed Father struck Mother, who was pregnant at the time. Father engaged in criminal activity (facilitating the sale of over .5 grams of cocaine) and drug use (methamphetamine) when not in jail. He did not pay any child support for the duration of DCS's involvement in this case.

The children have been in state custody since May 23, 2014. They are currently together in a safe and stable pre-adoptive home with foster parents who love them and treat them as part of the family. The children have a close relationship even with the extended foster-care family. The foster parents also care for the children's other needs by taking them to counseling and doctor's appointments. The children have had the opportunity to go hiking, to the zoo, to the beach, and to a costume contest in the park. To the contrary, there is no evidence of a meaningful relationship between Father and the children. The evidence revealed Lilly C. became upset when she discussed him.

Cameron C. is developmentally on track, doing well medically, and has improved her language skills. The foster parents work with her on potty training, numbers, letters, and reading. Lilly C. is on the honor roll and is engaged in various extracurricular activities, including gymnastics, basketball, and soccer. Lexis C. is making excellent marks in preschool, performing ballet, and playing soccer. A change of caretakers would likely have a negative effect on the children's wellbeing. Based on the cited factors and our review of the entire record, the evidence does not preponderate against the trial court's finding that termination was in the best interest of the children.

## V. CONCLUSION

The judgment of the trial court is affirmed.  The case is remanded to the trial court, pursuant to applicable law, for the enforcement of the court's judgment and for the collection of costs assessed below.  Costs of the appeal are taxed to the appellant, James L. C., Jr.

_____
JOHN W. McCLARTY, JUDGE